## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

HECTOR LOPEZ-HERRERA,

                Plaintiff,

v.

CAROLYN W. COLVIN, in her capacity as
Commissioner of the Social Security
Administration,

                Defendant.

Case No. 2:12-cv-03049-MHW

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

## INTRODUCTION

This case involves a challenge to the denial of disability benefits by the Social Security

Administration. Currently pending before the court are cross motions for summary judgment

filed by Petitioner Hector Lopez-Herrera and Defendant Commissioner of Social Security.[1]

(Dkts. 30 & 32). Petitioner is represented by D. James Tree. Defendant is represented by

Assistant United States Attorneys Pamela Jean DeRusha and Michael C. Ormsby and by

Christopher J. Brackett of the Office of General Counsel. The Court has reviewed the

---

[1]Carolyn W. Colvin became the Acting commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT, P. 1**

motions and supporting memoranda as well as the Administrative Record and deems these motions suitable for disposition without oral argument. For the reasons that follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income and Disability Insurance Benefits on March 25, 2008. (Tr. 108-15). Petitioner's applications were denied initially on May 22, 2008 and on reconsideration on October 15, 2008. (Tr. 58-61). Administrative Law Judge ("ALJ") Moira Ausems held a hearing on April 5, 2010 (Tr. 39-57). ALJ Ausems issued a decision finding Petitioner not disabled on July 30, 2010. (Tr. 14-38). Petitioner filed a timely appeal to the Appeals Council, which denied his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-8.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ, Petitioner was 40 years old. (Tr. 31). He has a ninth grade education and has performed unskilled work in the past as a produce packer, produce sorter, and an oven tender employed by a window-manufacturing company. (Tr. 44, 53, 129-130). He alleged disability due to a combination of impairments. The most significant of these was an injury to his shoulder that occurred on November 26, 2003 while Petitioner was lifting a 200-pound window at work. Medical records described him as experiencing a sudden onset of pain in his right shoulder, after which he was unable to abduct or flex without causing significant pain. (Tr. 355). An MRI revealed a labral tear or "SLAP" lesion in his shoulder. (*Id.*) He was initially treated conservatively, with pain

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 2**

medications, cortisone injections, and a course of physical therapy, but continued to experience pain and never returned to work. He was eventually underwent two surgical procedures to correct these problems, but continued to report significant pain and limited range of motion. (Tr. 22-23).

In addition to the injury to his shoulder, Petitioner also claimed disability based on a number of other impairments, including diabetes, hypertension, major depressive disorder, anxiety disorder, and pain disorder associated with a general medical condition. *Id.*

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving a disability in the first four steps of the sequential evaluation, after which the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. 20 CFR 404.1520(b) and 416.920(b). Here, the ALJ found Petitioner had no reported earnings since the alleged disability onset date of January 20, 2004 and that he was therefore not engaged in substantial gainful activity. (Tr. at 22).

At step two, it must be determined whether claimant suffers from a severe impairment, or a combination of impairments that is severe according to 20 CFR 404.1520(c) or 416.920(c). The ALJ found that Petitioner suffered from the following severe impairments: history of right shoulder labrum tear in an industrial injury, status post SLAP repairs with

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 3**

residual adhesive capsulitis and shoulder strain, cervical strain, diabetes mellitus, hypertension, major depressive disorder, anxiety disorder, and pain disorder associated with an underlying medical condition. (Tr. 22-23).

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment, as set forth in 20 CFR Part 404, Subpart P Appendix 1. If the claimant's impairments meet or equal a listed impairment and meet the duration requirements set forth in 20 CFR 404.1509 or 416.909, the analysis is done and the claimant is conclusively shown to be disabled. In this case, at step three, the ALJ found that the Petitioner did not have an impairment or combination of impairments that met or exceeded one of the listed impairments in subpart P. (Tr. 23-24).

If the claimant's impairments do not meet or equal the criteria for the listed impairments, the ALJ must determine a claimant's residual functional capacity (RFC) according to 20 CFR 404.1520(e) or 416.920(e). An individual's residual functional capacity is an assessment of the most a person can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Here, the ALJ determined that the Petitioner had the residual functional capacity for less than the full range of light work as defined by 20 CFR 404.1567(b) and 416.967(b). (Tr. 24). His limitations included being only "occasionally" able to lift or carry twenty pounds, and frequently being able to lift over carry ten pounds. The ALJ further found that Petitioner could stand, walk and sit for about six hours out of an eight hour workday. She found that he could frequently balance, stoop, kneel and crouch, crawl and climb ramps or stairs, but that he should never climb ladders or scaffolds. She found that he could occasionally reach

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 4**

with his right hand and arm, but that he could  frequently handle, finger, and feel with the right hand. (Tr. 25). In terms of mental and emotional issues, she found that Petitioner would be able to tolerate the stress of more than simple, routine tasks. (*Id.*).

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. 404.1520(f) and 416.920(f). If the claimant can do his past relevant work the analysis ends and the claimant is found not to be disabled.  If the claimant cannot do her past relevant work the analysis moves to step five. Here, the ALJ found that the claimant was not able to perform his past relevant work, due to the injury that diminished his lifting and carrying capacities.  (Tr. 30-31). This finding was based on the testimony of a Vocational Expert ("VE").

The fifth and final step of the analysis requires an assessment of whether the claimant is able to do other work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ determined that Petitioner was able to perform the following jobs: final assembler, hand packager, small parts assembler, and parking valet. (Tr. 31). The ALJ also found that 10,650 of these kinds of jobs existed in Washington state and many thousands more within the national economy. (Tr. 31).

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 5**

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). It is more than a scintilla but less than a preponderance. *Id*.

Finally, it is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id*. The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## ISSUES

Petitioner argues that the ALJ erred in the following ways: 1) by failing to properly credit the opinions of several of his treating providers who opined that he could not work; 2) by not providing clear and convincing reasons for her decision to discount Petitioner's subjective complaints of pain; and 3) by failing, at step five, to identify specific jobs

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 6**

available in the local and national economies which Mr. Lopez-Herrera could perform.

## DISCUSSION

### I.   The ALJ Did Not Err in Weighing the Opinions of Treating Doctors.

First, the Court disagrees with Petitioner's assertion that the ALJ erred by failing to properly credit the opinions of several of his treating providers who opined that he could not work, or that he had limitations beyond those credited by the ALJ.

The Ninth Circuit has held that:

> [a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. We have also held that clear and convincing reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing.

*Lester v. Chater*, 81 F.3d 821 (9th Cir. 2001) (internal citations and quotations omitted).

Upon a review of the medical records of these providers, the Court finds that the ALJ either provided clear and convincing reasons for discrediting their opinions or else sufficiently explained the reasons why she was affording those opinions only limited weight.

### A.  Dr. Ted Palmatier

Dr. Ted Palmatier was a physician with the Yakima Worker Care Clinic who treated Petitioner over a period of several years beginning just after his shoulder injury in November 2003.  At various times, Dr. Palmatier did opine that Petitioner was unable to work, but as

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 7**

the ALJ correctly noted, these records do not establish a continuous period of disability exceeding twelve months during which Petitioner would have been incapable of performing any substantial gainful activity. (Tr. 28). For example, though Petitioner has not engaged in substantial gainful activity since his injury, it appears that Dr. Palmatier first cleared Petitioner to return to work on March 8 of 2004 after the initial injury. It was subsequently determined that an additional month of physical therapy would be beneficial. (Tr. 216-218). By June of 2004, Dr. Palmatier had begun describing Petitioner as being fit for "modified" duty on various workers' compensation forms. (Tr. 526-533). In fact, the records Petitioner relies upon to establish disability actually describe him as being capable of "modified duty" or "light duty," with limitations on reaching, pushing, pulling, and lifting more than ten pounds. (Tr. 347-369). Dr. Palmatier did consistently note that these accommodations were not available at Petitioner's previous job, but the unavailability of an accommodation does not establish total disability. Dr. Palmatier also placed Petitioner in no work status for several weeks during the summer and fall of 2005, after an infection complicated his recovery from the second shoulder surgery. (Tr. 379 - 387). However, these restrictions were described as "temporary." (Tr. 685). For all these reasons, the Court agrees with the ALJ's assessment that Dr. Palmatier's records are indicative of short periods of total disability due to acute infections or other temporary conditions, but fail to establish a continuous period of disability exceeding twelve months.

**B.  Dr. Marie Ho.**

Nor did the ALJ err in discrediting the opinion of Dr. Marie Ho.  The ALJ correctly

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 8**

noted that Dr. Ho's opinion was consistent with her own assessment of Petitioner's residual functional capacity, except that Dr. Ho identified additional limitations on fine fingering and grasping with the right hand. (Tr. 30, 944). However, the ALJ discounted this aspect of Dr. Ho's opinion because it was inconsistent with the weight of evidence and because Dr. Ho had relied only upon Petitioner's subjective self-reports of pain in reaching this conclusion. These were adequate reasons, under the circumstances, for discrediting Dr. Ho's opinion. In the first place, Dr. Ho was a consulting physician who only saw Petitioner once, without reviewing any of his prior medical records. The record in this case was extensive and despite dozens upon dozens of office visits spreading over several years, Petitioner has not pointed to another provider who identified similar limitations on fingering and grasping. In addition, as will be discussed below, the ALJ determined that Petitioner's subjective complaints of pain and other limitations were not credible, and a number of Petitioner's primary medical providers also came to question whether he was exaggerating his symptoms to achieve secondary gain. An ALJ may properly discount a physician's assessment when it is based on the subjective complaints of a claimant who has been found to be not credible. *See, e.g. Tommasetti v. Astrue,* 533 F.3d at 1041. On these facts, the Court cannot say that the ALJ erred in discounting Dr. Ho's opinions.

The Case Analysis prepared by Dr. Charles Wolfe, a state agency consultant, does not change this result. (Tr. 946). Dr. Wolf did note that the Petitioner had recently seen Dr. Ho and that she had stated that he was only occasionally capable of fine fingering and grasping with his right hand. However, this assessment contains nothing in the way of independent

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 9**

analysis and instead relies entirely on Dr. Ho's opinions. To the extent that Dr. Ho's opinions were properly rejected, the ALJ did not err by failing to address Dr. Wolfe's opinion in her decision.

### C.   Dr. Donald Williams

The ALJ also properly discounted the opinions of Dr. Donald Williams, psychotherapist and psychiatrist who conducted an independent psychiatric evaluation of Petitioner on October 23, 2006. (Tr. 847-65). In his report, Dr. Williams indicated that Mr. Herrer-Lopez would be unable, from a psychiatric perspective, to perform various jobs including those of cashier, forklift operator and oven press/operator. (Tr. 865). With respect to the cashier position, Dr. Williams opined that Petitioner would be unable to perform the job because of his anxiety and very limited English speaking ability. (*Id.*). The ALJ rejected these opinions because they were not consistent with the evidence in the record as a whole and because they were based upon Petitioner's own self-assessment, which had been found to be not credible. As explained above, this is a valid basis for rejecting a physician's opinion. Also, as the Commissioner points out, two other psychiatrists conducted independent medical examinations ("IMEs") on Petitioner and both found that returning to work would be the "therapy" most likely to improve his mental status. One of these doctors, Colleen Peck, MD, confirmed Petitioner's diagnosis of depression, but also stated that "brief therapy with a specific focus on returning to work may be helpful, however, in that depressed patients do better the more active they remain and returning to work would be one of the most beneficial interventions for him." (Tr. 596). Dr. Peck also indicated that there were *no* psychiatric

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 10**

contraindications to the claimant performing a wide variety of jobs, including oven/press operator, husker attendant/vegetable sorter, fruit packer, apple sorter, cashier, truck driver, and forklift operator. (Tr. 597-604). Similarly, Christian Kole, M.D., a psychiatrist, conducted an IME on March 7, 2006 and concluded, "Psychologically, this man will be better off if he gets back to work." (Tr. 408).

Both Dr. Peck and Dr. Kole qualify as consultative physicians, and thus stand on the same footing as Dr. Williams in terms of the weight that must be accorded to their opinions. There was no error in the ALJ's decision not to give their opinions more weight than those of Dr. Williams.

## II. The ALJ Provided Adequate Reasons for Rejecting Petitioner's Subjective Complaints of Pain.

Nor did the ALJ err in rejecting Petitioner's subjective complaints of pain and other limitations. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). The ALJ must identify what testimony is not credible and what evidence undermines a claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Further, "[t]he ALJ must support his credibility finding 'with specific, clear and convincing reasons.'"

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 11**

*Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r. of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)). "[A]bsent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001). *See also, Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d at 958-59. Courts have also held that an ALJ may take the claimant's daily activities into account. *Light v. Social Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). In addition to these factors, the ALJ may consider prior inconsistent statements regarding the symptoms as well as "other testimony by the claimant that appears less than candid." *Chaudhry v. Astrue,* 88 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Evidence of self-limitation and diminished motivation are also relevant to determining the credibility of plaintiff's subjective complaints of pain and other limitations. *Osenbrok v. Apfel,* 240 F.3d 1157, 1166 (9th Cir. 2001). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Tommasetti v. Astrue,* 533 F.3d at 1039.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 12**

Here, the ALJ explained that "treating and examining medical sources of record have documented instances of non-anatomic pain behavior, less than optimal effort, refusal to follow recommended treatment, and a focus upon workers' compensation litigation issues that are strongly suggestive of secondary gain motivation." (Tr. 26). This ruling, which was the core of the ALJ's adverse credibility determination, finds ample evidentiary support in the record.

To begin with, there were numerous medical records that strongly indicated that Petitioner's primary medical providers had come to suspect that Petitioner was exaggerating his difficulties for the purpose of achieving secondary gain. For example, and IME performed on September 26, 2006 notes that at one point Dr. Palmatier and Registered Nurse Practitioner Chris Benner observed that while the patient's shoulder performance *improved* when he was hoping to find work as a forklift driver, it subsequently *worsened* when he failed the work hardening program for this job. (Tr. 579). Some time later, in April of 2006, these same providers also noted that Petitioner appeared quite stoic despite claiming to be experiencing pain at a level of 8/10.  (Tr. 592). They also noted that he had "quite a bit of theatrical and dramatic pain expression upon palpation of the right shoulder . . with very minimal pressure being applied during palpation."  (*Id.*). In May of that year, RNP Benner again noted that pain symptoms and range of motion improved when Petitioner was undergoing counseling to be trained for work as a truck driver but suddenly worsened again when he did not obtain that disposition. (Tr. 593). Even within the first year after the accident, Petitioner's providers had noted that the symptoms he was describing were

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 13**

inconsistent with the expected progress of the injury described and were suggestive of non-anatomic pain behavior. (Tr. 222). The opinions of the two consulting psychiatrists, Dr. Peck and Dr. Kole, were also replete with information upon which a reasonable ALJ could have to arrive at an adverse credibility determination. (Tr. 593).

Numerous other records support the ALJ's adverse credibility determination, but to enumerate them here would only be to restate what the ALJ thoroughly and painstakingly explained in her decision. Suffice it to say that the Court has reviewed each of the references relevant to her adverse credibility determination, and finds that the vast majority of them bear out her interpretations. (Tr. 26-27). There was no error involved in the adverse credibility determination.

## III.  The ALJ Did Not Err at Step Five.

Finally, there was no error in the ALJ's determination that numerous jobs existed in both the regional and national economies that Petitioner would be capable of performing. The ALJ's questions to the Vocational Expert ("VE") were consistent with the limitations in the residual functional capacity she had identified, and the residual functional capacity was in turn consistent with the medical evidence. A claimant does not prove error at step five simply by reiterating arguments that the ALJ misevaluated his or her impairments. *See, Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Here, the ALJ did not need to include Petitioner's asserted mental limitations in her questions to the VE, because she had already decided to give significant weight to the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 14**

opinions of psychiatrists who believed that returning to work was the best course of action for Petitioner. Petitioner also argues that the ALJ erred by failing to have the VE account for his limitations on overhead reaching and on handling, fingering, and grasping with his right hand. However, the evidence of the limitations on fingering, handling and grasping came from Dr. Ho, and the ALJ properly disregarded those opinions. There did appear to be some mis-communication at the hearing between the ALJ and the VE regarding the jobs available to someone with Petitioner's specific set of limitations, and the VE initially testified that there were *no* jobs available in the national economy for someone like him. (Tr. 54-55). However, once the ALJ clarified that her hypothetical included a younger individual who could only occasionally reach with his right hand but who could *frequently* finger, handle, and feel with that hand, the VE testified that there were a several jobs available to Petitioner. The VE also testified that all of these jobs existed in significant numbers in the local and national economies. For all these reasons, there was no error at step five. The decision of the Commissioner will be upheld.

### ORDER

1.   Defendant's Motion for Summary Judgment (Dkt. 32) is **GRANTED.**

2.    Plaintiff's motion for summary judgment (Dkt. 30) is **DENIED.**

3.   The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, after which the case shall be closed.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 15**



DATED: January 8, 2014

Honorable Mikel H. Williams
United States Magistrate Judge